# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

PEDRO PEREZ-HERNANDEZ,

     Movant,

vs.

                                   CIV 21-0497 KG/KBM
                                   CIV 21-0498 KG/KBM

UNITED STATES,

     Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on the *pro se* Motions pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody filed by Pedro Perez-Hernandez ("Perez-Hernandez") on May 28, 2021, in these two cases.[1] The § 2255 Motions arise out of two federal criminal cases which were consolidated at trial and at sentencing. The first motion (in CIV 21-0497) relates to an illegal reentry charge proceeding (CR 18-3752), and the second (in CIV 21-0498) relates to a supervised release revocation proceeding (CR 18-4018).[2]

The Honorable Kenneth Gonzales referred this matter to me on August 11, 2021, to conduct hearings, if warranted, including evidentiary hearings, and to perform any

---

[1] Because almost all of the documents relevant to both of the § 2255 Motions appear in the CIV 21-0497 court file, *"Doc."* will refer to documents filed on the docket of that case. Similarly, documents identified as "CR Doc." will reference documents in the criminal reentry case (CR 18-3752) unless otherwise noted.

[2] Perez-Hernandez has also filed a Motion for Judgment Not Withstanding the Verdict in just one of his § 2255 cases. *See* CIV 21-0498, Doc. 7. Neither a response nor a reply was filed to this motion.

legal analysis required to recommend to the Court an ultimate disposition of the case. *Doc. 10;* CIV 21-0498, Doc. 7.

Having given due consideration to the parties' submissions, the relevant law, and the court files, I will recommend that Perez-Hernandez's § 2255 motions be denied and that both cases be dismissed with prejudice. The Court finds an evidentiary hearing unnecessary because the motions and the court record conclusively establish that Perez-Hernandez is entitled to no relief. *See* 28 U.S.C. § 2255(b) (a court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"). I will also recommend that the Court deny Perez-Hernandez's related Motion for Judgment Not Withstanding the Verdict filed in the case relating to the supervised release revocation proceedings (CIV 21-0498).

## I.  FACTUAL BACKGROUND

District Judge Gonzales found the following facts beyond a reasonable doubt after a bench trial held on April 9, 2019. CR Doc. 58.

On October 23, 2018, United States Border Patrol Agent Richard Arevalo received information from remote video surveillance operators that they had a visual of two individuals who had illegally jumped the border fence between the United States and Mexico approximately 3 miles east of the Columbus Port of Entry. *Id*. ¶¶ 3-4. Surveillance operators further indicated that these individuals were heading north toward Columbus, New Mexico. *Id*. ¶ 3. Agent Arevalo commenced a search and found Perez-Hernandez hiding in a mesquite bush near the southeastern edge of Columbus, a town located within the District of New Mexico in the United States. *Id*. ¶¶ 9, 11, 12.

Agent Arevalo determined that Perez-Hernandez had illegally entered the United States, arrested him, and arranged for him to be taken to the Deming Border Patrol Station. *Id*. ¶ 15.

On October 24, 2018, United States Border Patrol Agent Derek Baker processed Perez-Hernandez at the Deming Border Patrol Station. *Id*. ¶¶ 18-19. During the booking process, Agent Baker took Pedro-Hernandez's biographical information, including his name, date of birth, and fingerprints. *Id*. ¶ 23. After obtaining this information, Agent Baker ran it through databases for criminal history, warrants, and immigration history. *Id*. ¶ 26. The database information indicated that Pedro-Hernandez was a citizen of Mexico and that he was previously deported from the United States on July 31, 2015, and on September 16, 2017. *Id*. ¶ 27. The information also showed that Perez-Hernandez had a prior conviction for illegal reentry. *Id*. ¶ 28.

**Previous Deportations**

On March 4, 2015, an immigration judge found that Perez-Hernandez was not a United States citizen and that he had previously committed a crime designated an aggravated felony.  *Id*. ¶ *74; Doc. 4-4*. Specifically, in 2012, Perez-Hernandez pled guilty to being a felon in possession of a firearm. *See United States v. Perez-Hernandez*, 711 F. App'x 230 (5th Cir. 2018). On that basis, the immigration judge ordered Perez-Hernandez removed. CR Doc. 58  ¶ 74. On July 29, 2015, The Board of Immigration Appeals upheld the order. *Id*. ¶ 75; *Doc. 4-1*. Two days later, Perez-Hernandez was deported to Mexico under an I-205 Warrant of Removal/Deportation. CR Doc. 58 ¶ 77; *Doc. 4-2*.

On August 3, 2015, just three days after his deportation, border patrol agents again apprehended Perez-Hernandez in the United States. CR Doc. 58  ¶ 79. Subsequently, Perez-Hernandez was charged with violating 8 U.S.C. § 1326 – illegally reentering the United States after being previously removed. *See id.* ¶ 80; CR 18-4018, Doc. 1-1.  After a trial held from May 17-18, 2016, in the United States District Court for the Southern District of Texas, a jury convicted Perez-Hernandez of illegal reentry. CR 18-4018, Doc. 1 at 2. The district court sentenced Perez-Hernandez to 24 months in prison on this Texas reentry conviction to be followed by a three-year term of supervised release, a special condition of which prohibited him from again illegally reentering the United States. *Id*. at 4.  Upon release from custody, Perez-Hernandez was deported to Mexico under a second I-205 Warrant of Removal/Deportation. CR Doc. 58 ¶¶ 30-34.

## II.  PROCEDURAL BACKGROUND

### A.  Indictment

On October 26, 2018, a criminal complaint filed in New Mexico federal district court charged Perez-Hernandez with illegal reentry after removal in violation of 8 U.S.C. § 1326(a)(1), (b)(2). CR Doc. 1. A Grand Jury indictment on that same charge followed on November 14, 2018. CR Docs. 10;11.

### B.  Transfer of Revocation Proceedings

On November 20, 2018, United States Probation filed a petition in the Southern District of Texas, asking that court to issue a warrant and set a revocation hearing to show cause why the term of supervised release imposed on the Texas reentry conviction should not be revoked based upon Perez-Hernandez again illegally

reentering the United States but this time, in the District of New Mexico. *See* CR. 18-4018, Doc. 14 at 1. That same day, the Southern District of Texas transferred jurisdiction over Perez-Hernandez as a supervised releasee to the District of New Mexico.  Judge Gonzales accepted the transfer of jurisdiction on December 10, 2018. *See* CR 18-4018, Doc. 1.

**C.  Trial and Representation by CJA Counsel**

Andre Poissant of the Federal Public Defender Office was originally appointed to represent Perez-Hernandez, but he was allowed to withdraw after his client expressed lack of confidence with Poissant's representation. CR Docs. 16; 17. Thus, on December 17, 2018, the Court appointed CJA attorney Brock Benjamin to represent Perez-Hernandez. CR Doc. 18.

On April 9, 2019, just before a jury trial was to begin, the Court held a hearing on multiple pre-trial motions. After the hearing, and based in part on the Court's rulings, Perez-Hernandez waived his right to a jury trial and requested a bench trial. CR Doc. 80 ¶ 8. After questioning Perez-Hernandez and making sure that he understood his rights, the Court granted Perez-Hernandez's request and excused the jury panelists.

The bench trial was conducted on April 9, 2019, and on May 20, 2019, Judge Gonzales entered his Findings of Fact and Conclusions of Law. CR Doc. 58. He found Perez-Hernandez guilty on the single-count indictment charging illegal reentry in violation of 8 U.S.C. 1326(a) and (b). *Id.* at 16. On November 26, 2019, Judge Gonzales found that by illegally reentering the United States, Perez-Hernandez had also violated the terms of supervised release imposed by the Southern District of Texas. CR 18-4018, Doc. 26.

### D.  Post-Trial Motions & Sentencing

While still represented by Mr. Benjamin, Perez-Hernandez filed his handwritten "Motion to Vacate Decision by District Court Pursuant to Unfair Trial and Violation of Sixth and Fifth Const. Amendment" on July 10, 2019. CR Doc. 62. On the same date, Perez-Hernandez filed a second hand-written document which the Court construed as a motion for new counsel. CR Doc. 61. Two days later, Mr. Benjamin filed a motion to withdraw as counsel for Perez-Hernandez, stating that Perez-Hernandez had informed him that he no longer wanted to be represented by Mr. Benjamin. CR Doc. 63. After a hearing on Mr. Benjamin's motion, the Court granted the motion and appointed CJA counsel Brandon Lee Lettunich to represent Perez-Hernandez on July 23, 2019. CR Docs. 65; 66.

Between July 23 and August 14, 2019, Perez-Hernandez filed several motions without consulting Mr. Lettunich, including: (1) a July 29, 2019 letter to the Court reminding it of his Motion to Vacate and stating that he did not want to proceed with Mr. Lettunich (CR Doc. 68); (2) a second letter entered the same day, requesting new counsel (CR Docs. 69; 70 (duplicate)); (3) an August 14, 2019 document entitled "Proposed Findings of Fact with Motion and Exhibits" (CR Doc. 73); and (4) a letter dated August 14, 2019, reasserting derivative citizenship as a defense to the offense charged in the indictment (CR Doc. 74).

Approximately six weeks after his appointment, Mr. Lettunich filed a motion to withdraw as counsel, stating that Perez-Hernandez expressed that he no longer wished to be represented by Mr. Lettunich. CR Doc. 75. On September 5, 2019, the Court held a hearing on the motion. CR Doc. 77. In granting the motion only in part, the Court

noted that "it ha[d] appointed three different attorneys to represent [Perez-Hernandez], each of whom are competent." CR Doc. 80 at 3. As discussed in detail later, Judge Gonzales found that Perez-Hernandez had waived his right to appointed counsel and allowed Perez-Hernandez to proceed *pro se* but with Mr. Lettunich serving as standby counsel. *Id.* at 5-6.

Construing Perez-Hernandez's July 10, 2019 motion (CR Doc. 62) as a motion for a new trial under Fed. R. Crim. P. 33, Judge Gonzales ordered the Government to respond, which it did on September 19, 2019. CR Docs. 79; 80; 81. Thereafter, the Court concluded that the "guilty verdict is not 'contrary to the weight of the evidence such that a miscarriage of justice' occurred" and denied the motion. CR Doc. 83 at 2.

Sentencing took place on November 26, 2019. For his illegal reentry offense, the Court imposed a 63-month sentence with 3 years of supervised release. CR Doc. 99. For Perez-Hernandez's violation of the terms of supervised release imposed by the Southern District of Texas, the Court sentenced Perez-Hernandez to an 8-month term of incarceration to be served consecutive to the 63-month sentence he received on the illegal reentry conviction. CR Doc. 18-4018, Doc. 27.

### E.  Tenth Circuit Appeal

On December 5, 2019, Mr. Lettunich filed a Notice of Appeal on behalf of Perez-Hernandez as to both convictions and sentences. CR Doc. 100; CR 18-4018, Doc. 28. The Tenth Circuit Court of Appeals consolidated the appeals, allowed Mr. Lettunich to withdraw, and then appointed attorney Michael Reece to represent Perez-Hernandez on his appeal. CR Docs. 106; 107.

On January 27, 2021, the Tenth Circuit filed its 10-page Order and Judgment. CR Doc. 126-1. That Order dismissed the consolidated appeals and expressly found that "the record reveals no non-frivolous basis for appeal." *Id.* at 9. The mandate was issued on February 19, 2021. CR Doc. 126.

### F.  Subsequent Compassionate Release Motion

On January 15, 2021, Perez-Hernandez filed a motion for a sentence reduction and compassionate release in the criminal case. CR Doc. 120. The Court appointed CJA counsel, Ann B. McCollum, to represent Perez-Hernandez on his compassionate release motion. CR Docs. 124; 125. Counsel then filed a second compassionate release motion on June 28, 2021. CR Doc. 137. On August 12, 2021, the Court denied Perez-Hernandez's motions for compassionate release. CR Doc. 146.

On September 4, 2021, Perez-Hernandez filed a notice of appeal in the Tenth Circuit as to the Court's denial of his compassionate release motions. CR Doc. 151. On September 30, 2021, the Tenth Circuit granted the motion of CJA counsel McCollum to withdraw as counsel for Perez-Hernandez. Blaine Myhre was then appointed to represent Perez-Hernandez on the appeal. CR Doc. 158.

## III.  DISCUSSION

The Motion for Judgment Not Withstanding the Verdict as to the supervised release conviction will be addressed before analyzing Perez-Hernandez's entitlement to any relief under § 2255.

### A. Motion for Judgment Notwithstanding the Verdict

In his Motion for Judgment Not Withstanding the Verdict, Perez-Hernandez contends that the evidence was legally insufficient to support the rendered verdicts. *See*

CV 21-0498, Doc. 7 at 25.[3] In criminal proceedings, a motion for judgment notwithstanding the verdict, more commonly known as a motion for judgment of acquittal, asks the court to find that the evidence is "insufficient to sustain a conviction." Fed. R. Civ. P. 29 ("Rule 29"). As explained by Rule 29, the motion must be made before any charge is submitted to the jury or, alternatively, "within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Rule 29(c).

Significantly, Rule 29 is predicated on the existence of a jury. The proceedings that resulted in Perez-Hernandez's conviction did not involve a jury; rather, he was convicted after a bench trial. Yet even if there had been a jury, Perez-Hernandez's motion is untimely, as it was filed on October 4, 2021, more than fourteen days after the May 19, 2019 verdict and five months after the Tenth Circuit affirmed the verdict on direct appeal. The Motion for Judgment Notwithstanding the Verdict is therefore not properly before the Court and should be denied.

### B. Relief Pursuant to § 2255

For persons convicted of crimes in federal court, the often-called federal habeas statute provides in pertinent part:

> A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

---

[3] The Motion is numbered and docketed only in the civil § 2255 case that is paired with Perez-Hernandez's criminal revocation case. Because Perez-Hernandez is *pro se*, the Court is unsure whether this was intentional. But even if it was not intentional, the Court's analysis would apply similarly to both cases.

28 U.S.C. § 2255(a). Because Perez-Hernandez does not contend that the Court was without jurisdiction or that his sentence exceeds the maximum authorized by law, he must demonstrate that his sentence is "otherwise subject to collateral attack." *See id*.

The Court must liberally construe Perez-Hernandez's filing because he is proceeding *pro se*. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007). Thus, the Court will hold his pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, the Tenth Circuit has expressly cautioned district courts they must not "assume the role of advocate for the pro se litigant." *Hall v Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### 1. Jurisdiction Despite Pending Appeal

The Court must first consider whether it has jurisdiction to address the habeas claims. As noted above, Perez-Hernandez currently has an appeal pending in the Tenth Circuit of the Court of Appeals contesting denial of his motion for compassionate release. *See* CR Doc.151. Usually, "'[t]he filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'" *United States v. Madrid*, 633 F.3d 1222, 1226 (10th Cir. 2011) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)) (internal alterations in the original). This judge-made rule is meant "to promote judicial economy and avoid the confusion and inefficiency that might flow from putting the same issue before two courts at the same time." *Id.* (further citation omitted).

10

Unless an exception applies, Perez-Hernandez's pending appeal divests this Court of jurisdiction. Neither Perez-Hernandez nor the Government address this jurisdictional issue. Nonetheless, the Court finds that two exceptions permit this Court to proceed to the merits of the § 2255 Motions. First, in civil matters, an exception applies if

> a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

Fed. R. Civ P. 62.1. Because Perez-Hernandez's § 2255 Motions are civil matters, they appear to fall within this exception. The motions were timely made and, in fact, were filed before Perez-Hernandez filed his appeal of the compassionate release decision.

A second exception permits a "district court to retain[] jurisdiction over 'collateral matters not involved in the appeal.'" *Madrid*, 633 F.3d at 1227 (quoting *Garcia v Burlington N. R. R. Co.*, 818 F.2d 713, 721 (10th Cir. 1987)). In his appeal pending before the Tenth Circuit, Perez-Hernandez argues that the Court erred when it denied his motion for a reduction of his sentence pursuant to 18 U.SC. § 3582(c)(1)(A). Substantively, the motion argues that Perez-Hernandez's medical conditions in tandem with the COVID-19 pandemic establish extraordinary and compelling reasons to reduce his sentence.

In contrast, Perez-Hernandez's § 2255 Motions do not ask for a reduction of his sentence; rather, he argues that his sentences were imposed in violation of the Constitution or laws of the United States. The Court concludes that the question of whether a court should mitigate a sentence based on ancillary matters is unrelated to

11

the question of the validity of a conviction and sentence. Therefore, I will recommend that the Court find that the habeas motions fall within the collateral matter exception such that it can properly address the merits of the § 2255 motions.

### 2. The Merits of Perez-Hernandez's Claims

Perez-Hernandez advances five grounds for relief.[4] For clarity, the Court will group his arguments into three categories: Sixth Amendment Claims, Fifth Amendment Claims, and claims of error at trial and sentencing. The Government argues that Perez-Hernandez's claims lack merit or are barred. The Court will consider each in turn.

### a. Sixth Amendment Claims

Perez-Hernandez alleges that he was denied his Sixth Amendment right to counsel. His argument is two-pronged. First, he contends that he was denied counsel at sentencing. Second, Perez-Hernandez argues that he was denied effective assistance of counsel at trial and on appeal.

### i. Deprivation of Right to Counsel

"The Sixth Amendment guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have Assistance of Counsel for his defence.'" *United States v. Holloway*, 826 F.3d 1237, 1241 (10th Cir. 2016) (quoting U.S Const. amend. VI).  That right attaches at "every step in the proceedings against [the defendant]" *Hooks v. Workman*, 689 F.3d 1148, 1185 (10th Cir. 2012) (quoting *Powell v. State of Ala.*, 287 U.S. 45, 69 (1932)). "[S]entencing is a critical stage of the criminal proceeding

---

[4] Perez-Hernandez's various claims are supported and submitted in more than one stated ground. As delineated in the § 2255 Motions, the five grounds are: (1) violation of his Sixth Amendment right to effective assistance of counsel; (2) violation of his Fifth Amendment rights; (3) violation of his Due Process right to a fair sentence; and claims (4) that the Court abused its discretion when it found him guilty of wrongful reentry; and (5) that the Court wrongfully found that Perez-Hernandez did not have derivative citizenship status. *See Doc. 1* at 1.

at which [a defendant] is entitled to the effective assistance of counsel." *Gardner v. Fla.*, 430 U.S. 349, 358 (1977). But the right "is not absolute," and trial courts have "wide latitude in balancing the right to counsel of choice against the needs of fairness." *Holloway*, 826 F.3d at 1241-42 (further citation omitted). Criminal defendants have a right to be represented by an otherwise qualified attorney, but criminal defendants do not have a right to appointed counsel of choice. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006) (citing *Wheat v. United States*, 486 U.S. 153, 158 (1988)).

As discussed above, Mr. Benjamin represented Perez-Hernandez at the April 9, 2019 bench trial, and the Court issued its findings of fact and conclusions of law on May 20, 2019, finding Perez-Hernandez guilty on the charge of illegally reentering the United States. Shortly thereafter, Perez-Hernandez expressed his displeasure with Mr. Benjamin (CR Doc. 78) and then formally requested that new counsel – an "advocate defense counsel" with expertise in immigration law – be appointed to represent him. CR Doc. 61 (filed July 10, 2019). The Court permitted Mr. Benjamin to withdraw and appointed Mr. Lettunich as new counsel on July 23, 2019. CR Docs. 65; 66.

Despite Mr. Lettunich's appointment, Perez-Hernandez persisted in filing his own various pleadings. CR Docs. 73 ("Proposed Finding of Facts with Motion and Exhibits filed August 14, 2019); 74 (letter filed August 14, 2019). Less than a month after his appointment, Mr. Lettunich filed a motion to withdraw citing his client's request for different counsel. CR Doc. 75 (filed August 20, 2019).

When confronted with a motion asking the Court to appoint new counsel, district courts must consider (1) whether the motion was timely; (2) whether the attorney-client conflict is so great that it has produced a total lack of communication precluding an

adequate defense; and (3) whether defendant "substantially and unjustifiably contributed to the communication breakdown." *Romero v. Furlong*, 215 F.3d 1107, 1113 (10th Cir. 2000).

Judge Gonzales conducted a hearing on September 5, 2019, addressing Perez-Hernandez's desire to have Mr. Lettunich removed as his counsel. At the hearing on the motion, the Court informed Perez-Hernandez that based on his prior conduct, he was not going to appoint new counsel. The Court advised:

> Now I want you to understand completely, because I want to be very clear, Mr. Perez, now, you have now had three attorneys. I'm not inclined to appoint another attorney to represent you. That's because of the circumstances that have caused each of your three attorneys to request permission to withdraw from the case; and that is that – your unwillingness to be represented by appointed counsel. I'll be very specific here.

> Now, you do have the right to be appointed counsel if you cannot afford an attorney, but that does not mean that you can be appointed an attorney of your own choosing who is appointed. Once again, you do have the right to hire your own attorney. You have explained you do not have the funds, you cannot afford to hire your own attorney, so the next option for you is whether to represent yourself. And you have explained that that is what you want to do, without having an attorney appointed.

CR Doc. 114 at 16:25–17:1-16. In response, Perez-Hernandez replied, "Yes. And there is no other option, yes." *Id.* at 17:17-18.

In his decision following that hearing, Judge Gonzales first detailed the procedural history of the illegal reentry case, focusing on the interaction of Perez-Hernandez with the several attorneys who had been appointed to represent him. He emphasized Perez-Hernandez's persistent filing of pleadings without the assistance of his counsel, indeed "circumventing appointed counsel by sending letters and other filings directly to the Court. . . ." CR Doc. 80 ¶ 23. Judge Gonzales observed that "[t]he number of attorney's appointed to [Perez-Hernandez] in this case is highly unusual,"

and that Perez-Hernandez had rejected all of the competent attorneys who had been appointed to represent him. *Id.* ¶ 20.

Judge Gonzales then determined that

> [b]ased on the number of appointed attorneys, the reasons each appointed attorney provided in each instance, Defendant's unwillingness to be represented by each appointed attorney, the Court [construes] the challenge to counsel's representation as Defendant's unwillingness to accept legal representation.

*Id.* ¶¶ 21-22. For these reasons, the Court concluded that appointment of new counsel was not warranted. ¶¶ 22-23.

Judge Gonzales also found that based upon Perez-Hernandez's independent filing of numerous letters and pleadings, he was competent to represent himself and, in fact, evidenced his desire to proceed *pro se*. *Id.* ¶¶ 23-24. A defendant has a Sixth Amendment right to waive counsel and represent himself in a criminal case, but the right is not absolute. *Munkus v. Furlong*, 170 F.3d 980, 984 (10th Cir. 1999). A criminal defendant may not waive his right to counsel unless his waiver is competent and intelligent. *Lay v. Royal*, 860 F.3d 1307, 1315 (10th Cir. 2017).

Judge Gonzales's thorough discussion at the hearing and his findings following the hearing establish that the waiver of counsel was intelligently made and that Perez-Hernandez was competent to represent himself. Moreover, Judge Gonzales took the additional step of ordering Mr. Lettunich "to remain as a backup" standby counsel to assure that Perez-Hernandez's right to counsel was protected. CR Doc. 80 ¶ 29.

This Court perceives no error in Judge Gonzales's refusal to appoint new counsel. At the hearing, Perez-Hernandez repeatedly stated that his attorney was not representing him in accordance with his directions. CR Doc. 114 at 6:6-25, 7:1-13,

12:10-12.  Perez-Hernandez also acknowledged that he understood that he was not entitled to an attorney of his choice. *Id.* at 9:19. When asked by the Court if he wanted to proceed *pro se*, Perez-Hernandez stated three times that he would represent himself. *Id.* at 11:10-12, 14:11-12, 17:14-18. The record further shows that the Court explained to Perez-Hernandez the difficulties and rights he might be giving up should he proceed *pro se*. *Id.* at 11:16-25; 12:2-7,13-17, 22-24; 13:1-20.  In sum, the record demonstrates that the Sixth Amendment right to counsel was not violated.

### ii.  Ineffective Assistance of Counsel

Perez-Hernandez also argues that he received ineffective assistance of counsel at trial and on appeal. Courts evaluate ineffective assistance of counsel claims under the two-prong test described in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, Perez-Hernandez must show by a preponderance of the evidence both that his "counsel's performance 'fell below an objective standard of reasonableness' *and* that 'the deficient performance prejudiced the defense.'" *Simpson v. Carpenter*, 912 F.3d 542, 593 (10th Cir. 2018) (quoting *Byrd v. Workman*, 645 F.3d 1159, 1167 (10th Cir. 2011)) (further citation omitted). Courts identify these prongs as the performance prong and the prejudice prong. *See, e.g.*, *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005). "These two prongs may be addressed in any order, and failure to satisfy either is dispositive." *Hooks,* 689 at 1186 (internal quotations omitted).

According to Perez-Hernandez, Mr. Benjamin was ineffective at trial for failing to argue (1) that Perez-Hernandez had been deported before he received a final order from an immigration judge, and (2) that on August 22, 2014, the Bureau of Prisons (BOP) released him as a United States citizen.

As to Mr. Benjamin's decision not to raise the first argument, it is not objectively unreasonable for an attorney to decline to make an argument in contravention of the evidence. Simply put, Perez-Hernandez's contention that he was deported without a final order is flatly contradicted by the evidence. The I-205 deportation warrant shows that Perez-Hernandez was deported on July 31, 2015, three days after the July 29, 2015 dismissal of his appeal to the Board of Immigration. Indeed, on the I-205 Warrant, Perez-Hernandez signed an acknowledgement that he understood that the Board of Immigration had issued a final order that upheld the 2015 immigration order. "[T]he Sixth Amendment does not require that counsel do what is impossible or unethical." *United States v. Cronic*, 466 U.S. 648, 657 n.19 (1984). A refusal to present perjured evidence is "well within accepted standards of professional conduct and the range of reasonable professional conduct acceptable under *Strickland*." *Nix v. Whiteside*, 475 U.S. 157, 171 (1986).

Similarly, Perez-Hernandez has not shown that Mr. Benjamin failed to present an argument about his release from the BOP. The record shows that Mr. Benjamin attempted to introduce an email from an Immigration and Customs Enforcement Agent that advised the BOP that they could release Perez-Hernandez without a detainer. CR Doc. 48 (Perez-Hernandez's list of exhibits); CR Doc. 55 at 129-33 (trial transcript). The district court excluded it on multiple grounds. CR Doc. 49 ¶ 14; CR Doc. 55 at 133-34. Trial counsel's performance does not become objectively unreasonable simply because counsel fails to convince the court to admit evidence. Moreover, the Tenth Circuit reviewed the identified exhibit and found that the identified email would not have substantiated Perez-Hernandez's claim of derivative citizenship. CR Doc. 126-1 at 4

("Perez-Hernandez fails to demonstrate how an informal ICE email . . . prove[s] that he was legally adopted by his stepfather"). The Tenth Circuit's ruling impedes any claim that he was prejudiced by Mr. Benjamin's inability to get the evidence admitted.

According to Perez-Hernandez, he also received ineffective assistance on appeal. Mr. Lettunich filed an *Anders* brief, stating that he could not identify nonfrivolous grounds supporting Perez-Hernandez's appeal. In *Anders v. California*, the Supreme Court crafted a procedure that accommodates both an appointed counsel's duty to present nonfrivolous arguments to the court and a defendant's constitutional right to appellate counsel. 386 U.S. 738 (1967). The Supreme Court explained:

> [I]f counsel finds his [client's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to review. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court – not counsel – then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous.

*Id.* at 744-45. Thus, this procedure permits appointed counsel to identify any potential argument and so advocate for his client while it serves to "induce the [reviewing] court to pursue all the more vigorously its own review . . . ." *Id.* at 745.

Lettunich's *Anders* brief identified two possible arguments: (1) that the district court erred in denying Perez-Hernandez's derivative citizenship defense, and (2) that he received ineffective assistance of counsel. CR Doc. 126-1 at 3. Perez-Hernandez filed three *pro se* responses to the *Anders* brief, and the Government declined to file a brief. *Id*. at 2. After a careful analysis of all claims, the Tenth Circuit concluded that the ineffective assistance of counsel claims were not properly before them and agreed that

18

there was "no nonfrivolous basis for appeal." Accordingly, the Tenth Circuit dismissed the appeal, and granted Mr. Lettunich's motion to withdraw.

It is unclear whether Perez-Hernandez contends that *Anders* briefs are unconstitutional *per se* or that Mr. Lettunich's *Anders* brief omitted crucial essential arguments. Regardless, both claims are meritless. The Supreme Court has explicitly found *Anders* briefs to be constitutional. *See McCoy v. Ct. of App. Wis., Dist. 1*, 486 U.S. 429, 442 (1988) ("the *Anders* brief is designed to assure the court that the indigent defendant's constitutional rights have not been violated"). Additionally, Perez-Hernandez fails to identify any argument that should have been included in the *Anders* brief but was omitted. Tellingly, all claims made in the § 2255 Motions here were also made in Perez-Hernandez's direct appeal. In view of the Tenth Circuit's ruling that Perez-Hernandez's arguments were frivolous, he has not and cannot show the Mr. Lettunich's representation "fell below an objective standard of reasonableness" or prejudiced his appeal.

### iii.  Fifth Amendment Claims[5]

The Fifth Amendment prohibits the federal government from depriving any person of life, liberty or property, without due process of law." U.S. Const. amend. V; *see also Al-Turki v. Tomsic*, 926 F.3d 610, 614 (10th Cir. 2019). Perez-Hernandez's due process arguments allege that certain rulings violated his liberty interests:

---

[5] In his Reply, Perez-Hernandez also asserts that the Government withheld relevant evidence and so violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963). An argument introduced for the first time in a reply is deemed waived and should not be further addressed here. *See Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Circ. 2016) .

I was deported unlawfully without receiv[ing] decision of BIA[,] deprived
[of] judicial review, and without a trial of removal by immigration judge.
Deported when [my] appeal at the Fifth Circuit was still pending.

*Doc. 1* at 6. Although somewhat unclear, Perez-Hernandez appears to challenge the 2015 immigration order and the 2016 Texas Reentry Conviction. This Court lacks jurisdiction to consider either argument.

First, Perez-Hernandez argues that his 2015 deportation was unlawful and that he has "new evidence" in support of this argument. *Doc. 1* at 6. The 2015 immigration removal order[6] made the following findings: (1) at the January 5, 2015 hearing, Perez-Hernandez admitted he was not a citizen of the United States; (2) he admitted he was a citizen of Mexico, (3) he presented no evidence that he was adopted by a U.S. citizen father and thus did not have a citizenship claim based on an alleged adoption; (4) he was not entitled to withholding of removal under § 241(b)(3) of the Immigration and Nationality Act or for relief under the Convention Against Torture; and (5) he had been convicted of an aggravated felony relating to a firearm and was removable under 8 U.S.C. § 1227(a)(2). *See Doc. 4-4.* On July 29, 2015, the Board of Immigration Review affirmed the March 4, 2015 immigration order. *Doc. 4-1.* An I-205 Warrant confirms that Perez-Hernandez was deported two days later on July 31, 2015.[7] *Doc. 4-2.*

Perez-Hernandez now appears to assert that the Government has documents that will prove that he was adopted and is a United States citizen by adoption. *Doc. 1* at

---

[6] In its Response Brief, the Government cites to an attached Exhibit # 1 which is presumably the same March 4, 2015 immigration order admitted at the bench trial as Government's Exhibit # 8. *See* CR Doc. 55 at 4.

[7] The Deportation Order was also an exhibit at trial.

6. Perez-Hernandez does not specifically identify the "new evidence" on which he now relies. But even if he had, the Court cannot consider his arguments.

During criminal proceedings, 8 U.S.C. § 1326(d) provides an avenue for a defendant to contest the validity of a deportation order.[8] A defendant may not employ § 1326(d) to challenge a deportation order in civil proceedings, however. Under the REAL ID ACT (codified at 8 U.S.C. § 1252(a)(5)), a court considering a habeas motion is specifically barred from reviewing "any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii), (B), (C), or (D) of this title . . . ."   Courts of Appeal are "the sole and exclusive means for judicial review from an order of removal." *Thoung v. United States*, 913 F.3d 999, 1001 (10th Cir. 2019) (citing 8 U.S.C. § 1252(a)(5)). Section 1252(a)(5) does not provide any exceptions to this rule. "[U]nder the plain language of [§ 1252(a)(5)], a habeas challenge to an order of removal is barred regardless of whether the petitioner is an alien or claims citizenship." *Gonzales-Alarcon v. Macias*, 884 F.3d 1266, 1274 (10th Cir. 2018).

Similarly, this Court is statutorily prohibited from considering the validity of Perez-Hernandez's 2016 reentry conviction. A § 2255 motion must be made in the "court

---

[8] Indeed, that avenue of redress is quite limited by the very terms of §1326(d):

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that —
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.

which sentenced [the movant]." 28 U.S.C. § 2255(a). Perez-Hernandez's 2016 reentry conviction and sentencing occurred in the Southern District of Texas. Thus, the District of New Mexico district court lacks jurisdiction to consider its validity.

Finally, in a single sentence, Perez-Hernandez alleges a violation of his Fifth Amendment right to be free from self-incrimination. In *Miranda v. Arizona*, the Supreme Court recognized that the privilege against self-incrimination is a substantive right that requires the government to give an "adequate warning as to the availability of the privilege" in custodial interrogations. 384 U.S. 436, 468 (1966). The remedy for a *Miranda* violation requires "only that any confession made in the absence of such advice of rights be excluded from evidence." *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976).

As an initial matter, the Court observes that Perez-Hernandez did not make this argument at trial nor in his direct appeal, so it is procedurally barred. Even if this argument was properly raised, Perez-Hernandez does not provide the Court with any information as to which statements were improperly elicited by the Government. He states only:

> I didn't bring the 'Miranda warning rights' which has been some important statements, but defense counsel kept stating that was not important[,] which I strongly believe it is. But this time would like to bring that issue which is also a right to state something before an interrogation.

*Doc. 1* at 10. Without further elaboration, this Court could only speculate as to the merits of such a claim and if prejudice could be shown. The Court declines to engage in such speculation.

### 4.  Claims of Error at Trial and Sentencing

The remaining claims in Perez-Hernandez's § 2255 Motions allege that the

District Court wrongfully imposed an "excessive sentence,"[9] "abused its discretion" in

denying admission of "reliable evidence," and wrongfully concluded that Perez-

Hernandez did not have "derivative citizenship status by adoption." *Doc. 1* at 9.  In

Perez-Hernandez's direct appeal, the Tenth Circuit considered all three arguments and

found them meritless.

As to the first contention, the Tenth Circuit found that his challenges to the

substantive reasonableness of either of the imposed sentences were "wholly frivolous."

CR Doc. 126-1 at 9. The Tenth Circuit reasoned that (1) the sentences fell within the

advisory ranges set forth by the advisory United States Sentencing Guidelines and were

therefore presumably substantively reasonable, and (2) the factual record supported the

Court's decision to impose the 63-month and the consecutive 8-month sentence.

Moreover, in rejecting Perez-Hernandez's claims that he should have instead been

fined or granted bail, the Tenth Circuit observed that "the Guidelines advise imposing

sentences of imprisonment for both [his] illegal-reentry conviction and his supervised-

release violation" and "bail is not an alternative to a prison sentence." *Id.* at 9.

In concluding that the District Court had not abused its discretion and wrongfully

excluded "reliable evidence," the Tenth Circuit opined:

> The district court considered both parties' extensive arguments regarding
> Perez-Hernandez's exhibits and made measured rulings as to the
> admissibility of each exhibit. In particular, the district court found that the

---

[9] Perez-Hernandez categorizes this claim as a Fourteenth Amendment Due Process claim. The Fourteenth Amendment protects against unconstitutional state action, whereas the Fifth Amendment protects against unconstitutional federal action.  Because the complained of actions arose out of federal proceedings, the Fifth Amendment, not the Fourteenth, applies.

exhibits were hearsay and were not sufficiently reliable or supported by guarantees of trustworthiness. The district court further found that the exhibits were not admissible as an opposing party's statement, *see* Fed. R. Evid. 801(d)(2); a business record, *see* Fed. R. Evid. 803(6) or under the residual exception, *see* Fed. R. Evid. 807. We detect no abuse of discretion in the district court's decision to exclude these exhibits.

*Id.* at 6-7.

Similarly, the Tenth Circuit considered and rejected Perez-Hernandez's contention that the Court erred in finding that he did not have derivative citizenship. The panel explained:

Adoption involves a formal judicial act and thus can generally be established through official court documents, including a judgment of adoption. *See Ojo v Lynch*, 813 F.3d 533, 535, 539 (4th Cir. 2016). But Perez-Hernandez presents no official court documents, nor does he offer any explanation for his failure to do so.
....

Even assuming that adoption can be established without the judgment of adoption or other official documents, the evidence Perez-Hernandez relies on here falls short.
....

Because Perez-Hernandez has not submitted competent evidence establishing his adoption by his stepfather, the district court did not err in concluding that Perez-Hernandez has not met the requirements for derivative citizenship.

*Id.* at 3-5.[10]

_____

[10] As the Board of Immigration Appeals explained in its July 29, 2015 Decision dismissing Perez-Hernandez's appeal of the Immigration Judge's March 4, 2015 Order:

The respondent has made a claim to United States citizenship. The respondent was born in Mexico on June 29, 1958. The respondent's birth in Mexico gives rise to a rebuttable presumption of alienage, shifting the burden to the respondent to come forward with evidence to substantiate his citizenship claim. The respondent claims to have acquired citizenship through his stepfather, a United States citizen who the respondent claims adopted him. Current § 320 of the Act, 8 USC section 1431, does not apply to the respondent because he was not under 18 years old on February 27, 2001, the effective date of the Child Citizenship Act of 2000 (the "CCA"). Accordingly, the respondent's claim to derivative

The "'law of the case' doctrine requires every court to follow the decisions of courts that are higher in the judicial hierarchy" when there is a final judgment that decided the issue. *Pittsburg Cty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d at 711 (quoting *Guidry v. Sheet Metal Workers Int'l Ass'n, Loc. No. 9,* 10 F.3d 700, 705 (10th Cir. 1993)); *see also United States v. Trent*, 884 F.3d 985, 994-95 (10th Cir. 2018). "Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255." *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir. 1989) (citing *United States v. Nolan*, 571 F.2d 528, 530 (10th Cir. 1978).

Perez-Hernandez has not identified any change in the law that would warrant reexamining these claims. Therefore, the Tenth Circuit's rulings preclude this Court's further consideration. Moreover, this Court cannot offer relief with respect to alleged errors by a higher court.

---

citizenship must be evaluated by reference to the law in effect prior to the CCA's effective date.

Even if the respondent had established that he had been legally adopted by his United States citizen stepfather, which he did not, the respondent could not have derived automatic citizenship through his claimed adoptive father under the law in effect prior to the CCA. The respondent's adoptive father (or stepfather) is a United States citizen by birth, the respondent's mother did not naturalize while he was under the age of 18 years, and former sections 320 and 321 of the Act applied only to children of parents at least one of whom acquired United States citizenship by naturalization while the child was under the age of 18 years. Moreover, before 1978, there existed no U.S. law that allowed adopted children to derive citizenship from their adoptive U.S. citizen parent. Former section 323(a) of the ACT, 8 U.S.C. § 1434(a) (repealed 1978), was a provision that allowed for an adoptive parent to petition for the naturalization of his or her adopted child. Thus, former section 323(a) of the act allowed an adoptive parent to request that the U.S. government grant citizenship to a child who was not yet a United States citizen.

*Doc. 4-1* at 1-2 (citations omitted).

## IV.  RECOMMENDATION

Because Perez-Hernandez has not established that he is entitled to § 2255 relief, or to relief on his Motion for Judgment Not Withstanding the Verdict, the Court recommends that both motions be denied and these cases be dismissed with prejudice

.

THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

_____
UNITED STATES MAGISTRATE JUDGE